NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


MICHAEL YOUNG,                              )
                                           )
                Petitioner,                )
                                           )
v.                                         )          Case No. 2D15-3245
                                           )
STATE OF FLORIDA,                          )
                                           )
                Respondent.                )
                                           )
_____  )

Opinion filed March 30, 2016.

Petition for Writ of Certiorari to the Circuit
Court for Lee County; J. Frank Porter,
Judge.

J. William Miskovich of Law Offices of
Kathleen A. Smith, Fort Myers, for Petitioner.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Kiersten E. Jensen,
Assistant Attorney General, Tampa, for
Respondent.


BADALAMENTI, Judge.

          Michael Young petitions this court for a writ of certiorari.  He seeks review

of the trial court's order denying his assistant public defender's motion to withdraw

based upon a conflict of interest.  After careful review, we have determined that the trial

court departed from the essential requirements of the law when it inquired into the

details of privileged information in contravention of section 27.5303(1)(a), Florida Statutes (2015), and denied counsel's motion to withdraw when counsel failed to answer. We therefore grant the petition and quash the trial court's order.

Mr. Young was scheduled to be tried for second-degree murder beginning on Monday, July 27, 2015. On Thursday, July 23, 2015, the Public Defender's Office of the Twentieth Judicial Circuit of Florida (Public Defender's Office) served the State with a certification of conflict. The certification stated that because Mr. Young's interests were "so adverse and hostile to those of another client and/or an attorney within the Office of the Public Defender that a conflict of interest exists." It requested that the trial court appoint the Criminal Conflict Regional Counsel to represent Mr. Young because "the Public Defender cannot adequately or ethically continue to represent" him. The certification of conflict was filed with the trial court the following morning, on July 24, 2015. The next day, on July 25, 2015, the State sent the following email to the assistant public defender:

> Please be advised the State of Florida is not interested in receiving any information of any kind or source from Mr. Young no matter who or what it pertains to. In turn, the State is not interested in listening to any snitch-type information or evidence against Mr. Young from other inmates or sources who perhaps are or were once represented by the Public Defender. The State's position is steadfast that Mr. Young, if he wishes to avoid a trial, must plead straight up to the information as charged and have a sentencing hearing after a PSI is completed. No plea negotiations of any nature will be considered at this point. I do not know if this changes the Public Defender's conflict but I want to give you as much notice as possible to the State's position before Monday. Please feel free to forward this to the Court if relevant to your conflict.

Three days later, the trial court conducted a hearing on the certification of conflict. At that hearing, the assistant public defender explained to the trial court that he learned of the conflict at 3 p.m. on July 23, 2015, and discussed it with "several of the senior attorneys" in the Public Defender's Office, who advised him "to call the conflict hotline from the Florida Bar." The assistant public defender explained that he "outlined in detail" the nature of the conflict during his call to the Florida Bar's Ethics Hotline and that the Florida Bar's Ethics Counsel (Ethics Counsel) recommended that the Public Defender's Office "withdraw from two cases."[1] He provided the trial court with the "call number" given to him by the Ethics Counsel for documentation purposes and explained that the Public Defender's Office filed the certification of conflict "the first thing Friday morning, 7/24." The assistant public defender emphasized that withdrawing "wasn't a choice. It was an obligation. And there's an attorney/client privilege involved. And I can't say anything further." He averred that the Public Defender's Office had "no choice" but to withdraw from Mr. Young's case, that there were "no false moves" in its certification of conflict, and that he started the process of certification of conflict "immediately after [he] talked to the Florida Bar."

The prosecutor provided the trial court with his hypothesis as to the possible basis of the conflict. That is, in response to the assistant public defender's comments, the prosecutor read into the record the aforementioned email, noting that the State Attorney's Office was not interested in working out any sort of deal for "snitch-type" information from or about Mr. Young. After reading the email into the record, the

---

[1]As a result of Ethics Counsel's recommendation, the Public Defender's Office also separately moved to withdraw as counsel for another client in a different case based on a conflict of interest.

- 3 -

prosecutor, to his credit, clarified that he did not know if his hypothesis as to the nature of the conflict had any bearing on the conflict known to the Public Defender's Office.

The trial court then asked the assistant public defender, "Is the nature of your conflict similar to what the State believes it might be?" The assistant public defender responded, "That I can't answer." The trial court then denied the motion to withdraw as follows, "Okay. Then we're going to trial tomorrow. Deny your conflict." Defense counsel attempted to interject, but the trial court continued, "Take it up to the Second DCA. I'm not doing it. You all can take it up today. We'll have a jury here tomorrow and we're going to try this case. Thank you. Eight-thirty."

On that same day, the trial court issued a written order denying the Public Defender's Office's motion to withdraw. In that order, the trial court opined that "the perceived conflict was based on the Public Defender hearing from his client the desire to provide information to the State Attorney's Office regarding another defendant, which was subsequently discovered to also be a client of the Public Defender's Office." The trial court thereafter stated that the "State Attorney advised the Public Defender on July 24, 2015 that it had no interest in receiving information of any kind or source from the Defendant, no matter who or what it pertained to," even those "who perhaps are or were represented by the Public Defender." The trial court pointed out that the "Public Defender declined to provide any additional information" as to whether "this was the type of conflict he believed existed." The assistant public defender thereafter filed a petition for writ of certiorari with this court, and this court stayed the proceedings in the trial court.

- 4 -

"Certiorari is an appropriate vehicle for review of an order denying a motion to withdraw in a criminal matter." Smith v. State, 156 So. 3d 1119, 1122 (Fla. 1st DCA 2015). "The Sixth Amendment guarantee of the assistance of counsel includes the right to counsel whose loyalty is not divided between clients with conflicting interests." Turner v. State, 340 So. 2d 132, 133 (Fla. 2d DCA 1976) (citations omitted). "To deny a motion for separate representation, where a risk of conflicting interests exists, is reversible error." Foster v. State, 387 So. 2d 344, 345 (Fla. 1980) (citing Holloway v. Arkansas, 435 U.S. 475 (1978)). As such, a trial court order compelling an ethically conflicted attorney to represent a criminal defendant denies that criminal defendant effective assistance of counsel. See Smith, 156 So. 3d at 1126. This "constitutes a departure from the essential requirements of the law that would result in an irreparable, material harm to the [certiorari] petitioner that cannot be remedied on final appeal." Id. (citing Ward, 753 So. 2d at 708).

Section 27.5303 entitled, "Public defenders; criminal conflict and civil regional counsel; conflict of interest," directs the public defender to file a motion to withdraw and move the trial court to appoint new counsel in circumstances where its office represents "two or more defendants" in the following circumstances:

> If, at any time during the representation of two or more defendants, a public defender determines that the interests of those accused are so adverse or hostile that they cannot all be counseled by the public defender or his or her staff without conflict of interest, or that none can be counseled by the public defender or his or her staff because of a conflict of interest, then the public defender shall file a motion to withdraw and move the court to appoint other counsel.

§ 27.5303(1)(a). The statute then directs that the "court shall review and may inquire or conduct a hearing into the adequacy of the public defender's representations regarding a conflict of interest without requiring the disclosure of any confidential communications." Id. (emphasis added).

Based on the plain language of section 27.5303(1)(a), the purpose of a trial court's inquiry is to determine the adequacy of the public defender's representations regarding a conflict of interest involving two or more criminal defendants represented by that Public Defender's Office. The statute does not require the trial court to accept the public defender's "factual representations at face value." Smith, 156 So. 3d at 1124 (quoting Scott v. State, 991 So. 2d 971, 973 (Fla. 1st DCA 2008)). But the statute's text expressly limits the court from requiring the public defender to divulge "any confidential information," recognizing that there will be circumstances where the public defender will be ethically precluded from sharing the precise facts giving rise to the conflict of interest. § 27.5303(1)(a).

Given this statute's express limitation of the scope of the trial court's inquiry, section 27.5303(1)(a) "does not give a trial court free rein to inquire into matters which are privileged by law." Smith, 156 So. 3d at 1125. The language of section 27.5303(1)(a) "does not purport to abolish the attorney-client privilege or the work product privilege, both of which limit the trial court's ability to learn all the facts." Smith, 156 So. 3d at 1124 (quoting Scott, 991 So. 2d at 974). "Where circumstances preclude the trial court's learning whether a conflict of interest has had or will have an impermissible effect, moreover, the motion for leave to withdraw should be granted." Id. (emphasis omitted) (quoting Scott, 991 So. 2d at 974).

Here, the crux of the trial court's denial of the motion to withdraw is the trial court's belief that Mr. Young had advised his assistant public defender of his desire to provide information regarding another criminal defendant represented by the Public Defender's Office. But because the assistant public defender was bound by attorney-client privilege, he could not address the trial court's "belief" as to the actual nature of the conflict.

The problem we have is no doubt a frustrating one for, among others, the trial court, Mr. Young, the State, and witnesses subpoenaed to testify. Trial was set to begin in less than a week after the conflict became known to the Public Defender's Office. The record supports that the assistant public defender exercised diligence in certifying conflict soon after he learned information that revealed a conflict of interest. He called for an ethics opinion from the Florida Bar's Ethics Hotline, explaining in detail the nature of the conflict. After being advised by the Ethics Counsel that the Public Defender's Office should withdraw from representation of both Mr. Young and another client, the assistant public defender expeditiously alerted the State, certified the conflict under oath in a written motion, and filed that certification along with a motion to appoint new counsel.

The exact nature of the conflict is unknown on the face of the certification. It states that Mr. Young's interests were "so adverse and hostile to those of another client and/or an attorney within the Office of the Public Defender that a conflict of interest exists." But both the State and the trial court had a hypothesis as to the nature of the conflict, despite the broad nature of the certification. The trial court asked the assistant public defender, "Is the nature of your conflict similar to what the State

believes it might be?" The assistant public defender responded, "That I can't answer," underscoring his previous representation to the trial court that "there's an attorney/client privilege involved." The trial court should have ceased the inquiry when, as an officer of the court, the assistant public defender asserted that a response to the inquiry would have required the disclosure of privileged information. The trial court departed from the essential requirements of the law because it necessarily compelled the assistant public defender to make the unsavory choice between disclosing privileged information and potentially being permitted to withdraw or depriving his client of the constitutional right to be represented by conflict-free counsel. Neither is a virtuous choice.

In assessing the "the adequacy of the public defender's representations regarding a conflict of interest," as required by the plain language of section 27.5303(1)(a), the trial court could not require the disclosure of privileged information, even if those facts could have aided the trial court's assessment. § 27.5303(1)(a); see also Smith, 156 So. 2d at 1124 (explaining that "there may be situations in which the trial court is precluded by a public defender's ethical duty from learning all the facts relating to the conflict of interest" (citing Scott, 991 So. 2d at 974)). The trial court could not fish for additional information which, upon the representation of the assistant public defender, was privileged information. The impact of the trial court's denial of the motion to withdraw was to deny Mr. Young effective assistance of counsel because his attorney would be "ethically conflicted." See Smith, 156 So. 2d at 1126 (quoting Ward, 753 So. 2d at 708).

The State argues that Mr. Young's counsel should have advised the trial court who the other conflicted party was and confirmed that one client had information

about the other. Only then, according to the State, could the trial court have inquired whether the State's promise not to use the informant testimony was broad enough to eliminate the conflict of interest. But that could not have been done here because the assistant public defender explained to the trial court that he was ethically precluded from disclosing the precise nature of the conflict. The trial court denied the motion to withdraw because it simply presumed the conflict was as the State suggested. There could be any number of reasons the Public Defender's Office was required to withdraw from representation based on its certification. All the Public Defender's Office was able to disclose was that it could not ethically represent Mr. Young because his interests were "so adverse and hostile to those of another client and/or an attorney within the Office of the Public Defender that a conflict of interest exists."

Furthermore, the State's argument is inconsistent with its representation that it was "not interested in receiving any information of any kind or source from Mr. Young no matter who or what it pertains to." (Emphasis added.) The identity of the other client would have made no difference if the State remained uninterested regardless of his or her identity. And, more importantly, the trial court's knowledge of the identity of the other client would not have made the assistant public defender's representations more or less adequate, per the language of section 27.5303(1)(a). Simply stated, the identity of the other client would not have changed anything in this case.

In situations like this one, there is no promise the State can make to do away with the conflict. The idea of the State making such a promise rests on the assumption that the State correctly deduced the actual matters causing the conflict in

the first place. The trial court had no way of verifying that assumption without violating attorney-client privilege, which would have been in clear contravention of the plain language of section 27.5303(1)(a), precluding the trial court from requiring the disclosure of "any confidential information." As this court stated in Moorman v. Threadgill, 462 So. 2d 573, 574 (Fla. 2d DCA 1985), cases will occur in which just describing "the actual matters which cause the possible conflict would . . . violate the attorney-client privilege," and the trial court must accept the public defender's representations. Accord Horan v. O'Connor, 832 So. 2d 193, 194 (Fla. 4th DCA 2002) ("We see no need for this counsel to explain why he wishes to withdraw in more detail, as such an explanation could be detrimental to the client or protected by the attorney-client privilege.").

We conclude by noting that prior to 1999, trial courts were required "to grant a public defender's motion to withdraw on conflict of interest grounds without conducting any factual inquiry." Scott, 991 So. 2d at 973 n.3 (citing Guzman v. State, 644 So. 2d 996, 999 (Fla. 1994)). Under current law, section 27.5303(1)(a) allows for a limited inquiry into a withdrawal motion caused by representation of multiple defendants whose interests are adverse. But section 27.5303(1)(a) expressly limits the inquiry to those matters that are not "confidential." The assistant public defender laid out the legal basis of the conflict in the certification, provided proof that he had contacted the Florida Bar's conflict hotline, and established that he had been diligent in certifying conflict. There is no suggestion on this record that the trial court disbelieved, or had reason to disbelieve, any of these representations.

The trial court departed from the essential requirements of the law by inquiring as to attorney-client privileged information as to the nature of the conflict. It was required to grant the motion to withdraw so that Mr. Young would not be forced to proceed to trial with an attorney who is ethically conflicted. See Smith, 156 So. 3d at 1126. Therefore, we grant the petition, quash the trial court's order denying the motion to withdraw, and remand with instructions to appoint Mr. Young conflict-free counsel.

Petition granted; order quashed; case remanded.


WALLACE and CRENSHAW, JJ., Concur.